WARNER, J.,
dissenting.
I dissent. A review of the entire record shows that the court did not have sufficient evidence to show that the father was “prepared to meet any medical emergency that [K.C.] might have,” or that he has extensive time with a diabetic trainer to learn how to manage K.C.’s diabetes. Moreover, the record simply does not support the conclusion that it is in either child’s best interest for the father to have additional timesharing with them at the present time.
The daughter, K.C., was diagnosed with juvenile diabetes when she was two years old. From that point on, she required constant monitoring, all of which was done by the mother. Her glucose levels fluctuate drastically and can crash at any moment, requiring the injection of insulin. These can be presaged by subtle changes in the child’s behaviors, which the mother can detect. Although she attends school, the mother is on call for any problem. The mother brings her home from school early two to three times a week due to her illness. She has 15 treating physicians, all coordinated by the mother.
K.C. carries with her an emergency treatment kit for severe hypoglycemia, which occurs about three to seven times a month. She uses an insulin pump, but she also requires on occasion a large injection which is first mixed in a bottle and then injected with a large needle into her thigh. The father has never administered this injection, although he has held K.C. while the mother has accomplished it. He attended training regarding her diabetes, but the training occurred when she was first diagnosed, nearly eight years earlier. The trainer also came to the home for a short period of time to instruct them in the use of the insulin pump approximately two or three years prior to the hearing. For the past two years he has not been involved in her treatments at all. In fact, when K.C. had an emergency while on a visit with him, he returned her to the mother to handle it.
K.C. has been hospitalized multiple times for her conditions, including for cardiac surgery. Her main treating physicians are located at Holmes Regional in Melbourne, as Indian River Memorial Hospital is not equipped to deal with her conditions. One time while in the hospital with severe ketoacidosis and tachycardia, K.C., who was hooked up to heart monitors and IVs, was crying and screaming that the doctors were trying to kill her. The father reacted by spanking K.C., which *358 was reported by the doctor to the authorities. This has resulted in K.C. being terrified to let her father know that she was in the hospital. At trial the father did not deny spanking his daughter at the hospital.
The father moved to Port St. Lucie, further away from Holmes Regional than the home in Indian River County. The mother expressed grave concerns about his ability to manage her condition and the length of time it would take to get K.C. to Holmes Regional in the event of a glucose crash, which could put the child into danger.
In the two years prior to the final hearing, the children have spent time each weekend with their father but have spent a night with him only twice. The mother, her neighbor, and the mother’s older son (from a different marriage), all testified that the children are afraid of their father, because he is rough with them. Once, the father accidentally broke the younger son’s arm rough-housing with him. The younger son panics over visitation with his father, because his father is rough with him, hitting him with tennis balls so hard that marks are left. The younger son returns from visitation with bruises on his body. Both children have required extensive psychological counseling as a result of the visitation with their father.
One might think that the evidence could lead to the conclusion that the mother was overprotective and blew some of these incidents out of proportion, yet the mother’s concerns as to the safety of the children were not rebutted by the evidence presented. In fact, they were supported by the other witnesses and not contradicted by the father. The trial court’s conclusion that the father had the ability to detect changes to his daughter’s condition is not supported by the record, and the court’s finding that the father has dealt with emergencies is also not supported by the record. The father has been involved in such emergencies only in a supporting role.
Although the court found that the standard parenting plan was in the “best interests of the children,” neither the record nor the court’s findings in the final judgment support that conclusion. The court’s order of immediate weekend visitation under these circumstances, and where the children have not had such visitation in the past, is an abuse of discretion. And while I do not question the court’s finding that the father loves his children, the evidence simply does not support the conclusion that the best interests of the children would be served by increased visitation. I would reverse the parenting plan as to both children and require the court to modify the visitation plan to phase-in increased visitation with the father on a gradual basis with some supervision of the children’s progress as the visitation expands. Their best interests are not served by the court’s current order.